DOLORES GINÉS, Represented by her mother MARÍA ELENA
GINÉS, Plaintiff and Appellee, v. JOSÉ DOLORES ESCUDERO,
Defendant and Appellant.

No. 8193. Argued April 1, 1941.—Decided April 28, 1941.

*R. Soltero Peralta,* for appellant. *José E. Díaz,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

This is a case of filiation where the complaint, filed in the District Court of Arecibo, alleged in brief as follows:

That the defendant José Dolores Escudero, single, over 21 years old, had amorous relations with María Elena Ginés, who also was single, over 21 years old, in the Ward Coto of Manatí, and that as a result of these relations the plaintiff, Dolores Ginés, was born in the said town on November 27, 1937; that at the moment of conception and that of birth of the plaintiff, Dolores Ginés, her parents could have married without dispensation, or legal impediment; that the defendant, José Dolores Escudero, after he engendered the plaintiff Dolores Ginés, has taken care of her personal needs, furnishing her with food, clothing and medicines, and has called her his daughter in public and private, giving her the enjoyment and benefit of the uninterrupted possession of the condition of his recognized natural child.

The defendant, after filing a demurrer for want of facts to constitute a cause of action, which was overruled, answered the complaint denying generally and specifically all the facts alleged, since it had not been sworn.

After the trial, the lower court rendered judgment in favor of the plaintiff on October 21, 1939, from which the defendant has taken the present appeal in which he alleges that the lower court committed five errors, to wit: First, in refusing to admit evidence that the defendant had sexual relations with other men at the time the child might have been conceived; Second, in considering that the parol evidence of the plaintiff was sufficient to sustain the recognition; Third, in not considering that there exists a conflict in the evidence which not only prevents that introduced by the plaintiff from being strong and convincing, but destroys its preponderance; Fourth, in finding that the defendant had recognized his paternity of the child through acts and words; and Fifth, in finding for the plaintiff.

The opinion that served as basis for the judgment rendered by the lower court, only has four paragraphs, which read as follows:

"From all of the evidence, we arrive at the conclusion that José Dolores Escudero had amorous relations with María Elena Ginés for some time, and as a result of the same the child Dolores Ginés was engendered and was born and that at the moment when such child was conceived or was born, there was no legal impediment to those relations.

"There is also convincing evidence in the sense that Escudero, by acts and words, recognized his paternity over the said child, whose recognition makes it unnecessary to decide whether in reality he lived or not in public concubinage at the date of her birth.

"*The defendant introduced some evidence with the purpose of giving the impression that the mother of the child was living in such a way, that no conclusion could be reached as to the paternity of the child, and that there was another man who was the real father of the child; but besides the fact that there were acts of recognition on the part of the defendant, the answer did not raise any questions about the conduct of the mother and was limited to a denial of the facts of the complaint.* By virtue of this answer, the defendant so limited himself, *that he could only offer evidence to contradict the facts of the complaint, because if it had been alleged that there was another man having relations with the plaintiff, and that he was the father of the child, then the plaintiff would have had the opportunity to come prepared to present evidence against this new matter.*

"For the reasons stated above, the court renders judgment for the plaintiff and in consequence thereof, declares the plaintiff Dolores Ginés a recognized natural daughter of the defendant José Dolores Escudero, with the right to use his surname, and other rights that our code grants, with costs to the plaintiff." (Italics supplied.)

■■ Let us consider the first assignment of error which refers to the refusal of the lower court to admit evidence showing that the mother of the plaintiff had sexual relations with other men at the time the child could have been conceived. The incident which motivated the order of the court that appellant complains of, occurred while María Elena Ginés, mother of the plaintiff, was testifying, and we shall

cite it as it appears in pages 6 and 7 of the transcript of the evidence during the cross-examination by the attorney for the defendant. It says:

"Q. Do you know Horacio Vélez?

"A. *No, sir, I don't know him.*

"Q. Can you assert under oath that you don't know him?

"A. In the sense . . .

"Hon. Judge: Take your time testifying.

"Witness: *I knew Horacio* . . .

"Hon. Judge: He is a lawyer and he has to defend his client, so answer the truth and without being angry.

"Q. Do you accept that you know Horacio Vélez?

"A. *Since a few days ago.*

"Q. Do you know him?

"A. *I knew him.* To that man, I took this case of abandonment of minors . . .

"Hon. Judge: After you give the answer you may explain.

"Attorney Muñoz Igartúa: Exception.

"Q. Did you say that you know him?

"A. Yes, sir.

"       *       *       *       *       *       *       *

"Q. Why didn't you bring him as witness to the court?

"A. Because Horacio Vélez has never meant anything to me.

"Q. But you know that our evidence consists of that . . .

"Attorney Díaz: I object.

"Q. Have you seen Horacio Vélez?

"A. Yes, sir.

"Q. How is he?

"Hon. Judge: I have seen the answer to the complaint and it only denies the facts. He should have alleged that she had love affairs with another man if he wanted to raise the question. He should have alleged that, but he has not done so. Denying that it is true, he can only bring evidence that it is not true that he is the father." (Italics supplied.)

It is true that notwithstanding this order of the court, the witnesses of the defendant were permitted to testify as to the relations of María Elena Ginés and Horacio Vélez, but, as we have seen, the judge deciding the case states in his opinion that the said evidence was not admissible, and

that the defendant "could only introduce evidence tending to destroy the facts of the complaint" as the answer did not raise any question as to the conduct of the mother. It is obvious that the lower court completely rejected said evidence in its consideration and decision of the case on its merits.

The question is not new in this jurisdiction, and was decided since the year 1913 in a way contrary to the views adopted by the lower court. In the case of *Rivera* v. *Díaz*, 19 P.R.R. 524, this Court reversed the judgment precisely because evidence of this nature had been eliminated and it expressed itself as follows at pages 528 and 529:

"In the opinion on which the trial judge bases his judgment against the defendant it was decided to strike out the testimony of defendant's witnesses, Juan Ortiz and Juan Santiago, on the ground that the question to be decided in the present action of filiation is whether the minor Ramón is the child of the defendant and the question should not be permitted to extend beyond the allegations by admitting evidence tending to show whether the father of the child might have been another person, *which question did not figure in the pleadings*.

"As a matter of fact, that testimony should not have been eliminated inasmuch as in actions for acknowledgment of filiation evidence that the plaintiff had carnal intercourse with other men during the time when the child could have been begotten is pertinent if offered to show sexual connections with such men during such period. 5 Cyc. 660. This principle is sustained in Wigmore, volume 1, p. 195, sec. 133, and in innumerable cases decided by the courts, among which are *Bell* v. *State*, 124 Ala. 94; *Allred* v. *State*, (Ala.) 44 So. Rep. 60; *Short* v. *State*, 4 Harr. (Del.) 568; *Smith* v. *Yaryan*, 69 Ind. 445; 35 Am. Rep. 232.

"In striking out this testimony the trial judge committed a fundamental error which may have influenced him in weighing the evidence, seeing that he considered the same under the erroneous impression that said testimony was inadmissible and could not be taken into account in deciding the case." (Italics supplied.)

Note that it is expressly stated that the issue was not raised in the pleadings.

In the case of *Rico* v. *López,* 21 P.R.R. 201, this rule was ratified but applied to a case in which the issue had been raised by the defendant and it was said at page 209:

"The foregoing doctrine applies with greater force to the case at bar inasmuch as *the defendant alleged expressly as new matter of defence in his answer* that the person who claimed filiation was not the child of the person named in the complaint, but of another whose name was given."

We have examined the authorities and the decisions cited in the case of *Rivera* v. *Díaz, supra,* and it is true that all sustain that in the so called "bastardy prosecutions" of the American law, the evidence that the plaintiff had sexual relations with other men at the time that the child could have been conceived is admissible and pertinent if it is offered to show the sexual relations with those men at the moment of the conception. It does not appear, nevertheless, from the authorities and cases cited what requisites were required as to the pleadings, that the defendant should comply with to make said evidence admissible.

Accordingly what the citation from 1 Wigmore on Evidence 195, Sec. 133, (1904 ed.), says, is as follows:

"On this principle it is permissible to show, in a *filiation* suit or *bastardy* prosecution, that the mother had intercourse with another man about the time designated by the period of gestation, for this predicates an equal possibility of conception through some one else's act."

The case of *Allred* v. *State, supra,* was a criminal case and the defendant was allowed to cross-examine the plaintiff, asking if she had sexual relations with another man during the period when the conception took place.

The case of *Smith* v. *Yaryan, supra,* was one of damages as a consequence of a seduction. In the text of the opinion it is not stated what allegations were made by the defendant in his answer, for after setting forth the facts that were

alleged in the complaint all that is said is: "issue was joined and the cause tried by a jury." It was in the cross-examination of the plaintiff that she was asked if she had had sexual relations with other men at the same date when she had them with the defendant and the court did not admit said evidence. On appeal the judgment was reversed, it being held that the questions were admissible because the case was one in which the jury had to determine if the defendant was the father of the child before ordering him to pay damages, and that the same rule applied in "bastardy prosecutions" should be applied.

It can be seen, therefore, that the cases cited in *Rivera* v. *Díaz, supra,* are in its majority criminal in character, and that the only thing they decide is that the evidence was admissible, but they are not authority to hold that it was not necessary that the defendant should plead in his answer and as affirmative defense that other men had sexual relations with the mother at the time of the conception of the child. On the contrary, even in the bastardy prosecutions or proceedings of the continental jurisprudence the recognized doctrine is that when the procedure is of a civil nature, the defendant must plead any affirmative defense that he would like to allege in opposition to the complaint.

In 10 C.J.S. 166, Sec. 77, the rule is set forth, to wit:

"As a general rule, if defendant wishes to set up an affirmative defense, it is incumbent on him to present it by pleading on which an issue may be made up in an orderly manner, according to the usual procedure in civil cases."

It is true that the complaint in the case at bar was not sworn, and that it was enough that the defendant should deny generally the facts in the answer, according to Section 110 of the Code of Civil Procedure, which provides as follows:

"Section 110.—The answer of the defendant shall contain:

"1. A general or specific denial of the material allegations of the complaint controverted by the defendant.

"2. A statement of any new matter constituting a defense or counterclaim . . . . If the complaint be not verified, a general denial is sufficient, but only puts in issue the material allegations of the complaint."

Therefore, any new matter which constitutes opposition to the complaint should be pleaded in the defendant's answer because when a general denial is made, only the essential facts of the complaint remain in issue.

Considering the nature and scope of the evidence that could be introduced in a case of filiation, in which the defendant charges the mother with having had sexual relations with other men during the period of conception, we are of the opinion that the failure to require that a question of such importance be pleaded as affirmative defense in the answer, before the defendant be permitted to offer evidence in support of said counts, would constitute a surprise or lack of defense for the plaintiff. The case of *Rivera* v. *Díaz,* 19 P.R.R. 524, and any other later case which upholds a theory contrary to the one expressed herein should be considered expressly overruled.

Now then, as the case at bar was brought and prosecuted under a legal situation which arose from the decision of the case of *Rivera* v. *Díaz, supra,* the defendant was not bound to make any other pleading than the one he made, that is, a general answer to the complaint, in order to believe reasonably that the evidence that he tried to offer was admissible. It having been shown, also, that the lower court did not take into consideration all the evidence introduced by the defendant in deciding the case, we are of the opinion that the course which this court, in justice, should follow is to grant the appeal and vacate the judgment rendered by the lower court with instructions to it to reopen the case and to grant to the defendant, if he so requests, time to file an amended answer and to hold a new trial in which the parties may offer all the evidence pertinent to their respective pleadings.